UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | In Proceeding under Chapter 11 |
| | ) | |
| BRIDGE INFORMATION SYSTEMS, INC., et al., | ) ) ) | Case No. 01-41593-293 |
| | ) | |
| Debtors. | ) | Honorable David P. McDonald |
| | ) | |
| | ) | |
| SCOTT P. PELTZ, as Chapter 11 Plan Administrator for BIS Administration, Inc., f/k/a Bridge Information Systems, Inc., et al., | ) ) ) ) | Adv. Pro. Nos. 03-4099-293 through 03-4103-293 |
| | ) | Response Date: April 1, 2005 by 4:00 p.m. |
| Plaintiff, | ) | Hearing Date: April 11, 2005 |
| | ) | Hearing Time: 10:00 a.m. |
| v. | ) ) ) ) | Location: Bankruptcy Court, 111 South Tenth Street, St. Louis, Missouri, Floor 5, South Courtroom |
| | ) | |
| WELSH, CARSON, ANDERSON & STOWE VI, L.P., a Delaware Limited Partnership, WELSH, CARSON, ANDERSON & STOWE VII, L.P., a Delaware Limited Partnership, WELSH, CARSON, ANDERSON & STOWE VIII, L.P., a Delaware Limited Partnership, WCAS CAPITAL PARTNERS II, L.P., a Delaware Limited Partnership, WCA MANAGEMENT CORPORATION, f/k/a WCAS Management Corporation, a New York Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., PAMCO CAYMAN, LTD., ML CBO IV (CAYMAN) LTD., HIGHLAND LEGACY LIMITED, KZH HIGHLAND – 2LLC, KZH PAMCO LLC, SRV – HIGHLAND, INC., and GLENEAGLES TRADING LLC, | ) ) ) ) ) ) ) ) | Adv. Pro. No. 03-4577-293 |

|  |  |
|---|---|
| and | ) |
|  | ) |
| SCOTT PELTZ, as Chapter 11 Plan Administrator for BIS Administration, Inc., (f/k/a Bridge Information Systems, Inc.) and certain of its subsidiaries, | ) ) ) ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| WELSH, CARSON, ANDERSON & STOWE VI, L.P., WELSH, CARSON, ANDERSON & STOWE VII, L.P. WELSH, CARSON, ANDERSON & STOWE VIII, L.P., WELSH, CARSON, ANDERSON & STOWE IX, L.P., WCAS CAPITAL PARTNERS II, L.P. THOMAS E. MCINERNEY, AND PATRICK J. WELSH, | ) ) ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**CONSENT MOTION FOR ENTRY OF AN ORDER
APPROVING SETTLEMENT AND COMPROMISE OF ALL
CLAIMS AND CONTROVERSIES AS TO WELSH CARSON
PARTIES AND DAVIS POLK & WARDWELL AND FOR
DISMISSAL WITH PREJUDICE OF ADV. PROC. NOS. 03-4577-293,
<u>03-4099-293, 03-4100-293, 03-4101-293, 03-4102-293, 03-4103-293 AND 04-4022-293</u>**

Mark L. Prager (IL #2246503)
David B. Goroff (IL #6190039)
Michael J. Small (IL #6207645)
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, Illinois  60610
(312) 832-4500
(312) 832-4700 facsimile
mprager@foley.com
dgoroff@foley.com
msmall@foley.com

Attorneys for the Plan Administrator

011.1254378.4

**INTRODUCTION**

Scott P. Peltz, the Chapter 11 Plan Administrator (the "Plan Administrator") for the estates of BIS Administration, Inc. (the "Parent Estate") and certain of its subsidiaries (together, the "Debtors"), by his attorneys, Foley & Lardner LLP, pursuant to 11 U.S.C. § 105 and the terms of the Second Amended Joint Plan of Liquidation (the "Plan") and consistent with the substantive requirements of Federal Rule of Bankruptcy Procedure 9019,[1] by this consent motion (the "Motion"), seeks entry of a Stipulation and an Order, attached as Exhibit 1, approving a settlement and compromise (the "Settlement") between the Plan Administrator on behalf of the Debtors and each of Welsh, Carson, Anderson & Stowe VI, L.P. ("Welsh VI"), Welsh, Carson, Anderson & Stowe VII, L.P. ("Welsh VII"), Welsh, Carson, Anderson & Stowe VIII, L.P., Welsh Carson, Anderson & Stowe IX, L.P., WCAS Capital Partners II, L.P., WCA Management Corporation, WCAS Management Corporation, Thomas E. McInerney, and Patrick J. Welsh (collectively, the "Welsh Carson Parties") and Davis Polk & Wardwell ("DPW") that resolves: (1) five preference adversary actions brought by the Plan Administrator against certain of the Welsh Carson Parties (the "Preference Adversaries"); (2) a suit alleging that certain of the Welsh Carson Parties used their alleged control over the Debtors to cause the Debtors to transfer stock in Savvis Communications Corporation ("Savvis") from the Debtors to them and make payments to Savvis that would otherwise have gone to the Debtors' creditors and that such Welsh Carson Parties made fraudulent and negligent representations regarding the Debtors' financial condition in the year prior to their bankruptcy and in which the Plan Administrator has asserted grounds for additional claims, including claims for breaches of fiduciary duty (the "Alleged Breach of Duty Adversaries"); (3)

---

[1] Under the terms of the Plan and Section 4.1 of the Plan Administrator Agreement, notices of settlement and compromise under Federal Rule of Bankruptcy Procedure 9019 need not be given by the Plan Administrator. Nonetheless, this Motion more than adequately establishes that the Settlement satisfies all substantive requirements of Rule 9019.

1

Claim No. 1442 filed by various Welsh Carson Parties and certain related individuals against the Parent Estate (the "Welsh Claim") and the Plan Administrator's objection to that claim; (4) a preference action brought by the Plan Administrator against DPW (the "DPW Adversary"), a law firm that has represented the Welsh Carson Parties in the Preference Adversaries and the Alleged Breach of Duty Adversaries; (5) the Claim filed by DPW, No. 1441, against the Parent Estate (the "DPW Claim") and the Plan Administrator's objection to that claim; and (6) the Motion to Compel pursuant to 11 U.S.C. § 1142, filed by certain Welsh Carson Parties on February 28, 2005 (the "Motion to Compel").

The Welsh Carson Parties and DPW consent to and support this Motion. Under the Settlement, the Welsh Carson Parties will transfer $9 million to the Debtors' estates for the benefit of the Debtors' creditors. In addition, the Plan Administrator will avoid the cost, expense and uncertainty of litigating the various adversaries resolved pursuant to the Settlement. The Settlement is conditional on the Alleged Breach of Duty Adversaries' being dismissed with prejudice, which is appropriate for the reasons stated below. Nothing in this Motion or the Settlement is intended or should be construed as an admission of liability of any kind; the Welsh Carson Parties have informed the Plan Administrator that they do not believe that they have any liability and enter into the Settlement solely to avoid the costs and uncertainties of further litigation. In support of this Motion, the Plan Administrator states as follows:

## BACKGROUND

1. On February 15, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Code") in this Court. On February 13, 2002, this Court confirmed the Plan. Pursuant to the Order confirming the Plan and the Plan Administrator Agreement, the Plan Administrator was appointed to, inter alia, pursue causes of action and administer the Debtors' estates.

2

**This Motion Resolves**
**The Preference Adversaries**

2. On February 5, 2003, the Plan Administrator filed the Preference Adversaries, which are five related adversary proceedings in this Court against various of the Welsh Carson Parties. The Preference Adversaries are captioned <u>Peltz v. Welsh, Carson, Anderson & Stowe VI, L.P.</u>, Adv. Proceeding No. 03-4102-293, <u>Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P.</u>, Adv. Proceeding No. 03-4099-293, <u>Peltz v. Welsh, Carson, Anderson & Stowe VIII, L.P.</u>, Adv. Proceeding No. 03-4103-293, <u>Peltz v. WCAS Capital Partners II, L.P.</u>, Adv. Proceeding No. 03-4100-293, and <u>Peltz v. WCA Management Corporation (f/k/a WCAS Management Corporation)</u>, Adv. Proceeding No. 03-4101-293, and were brought to recover certain payments made to these Welsh Carson Parties in the year before the Petition Date (the "Transfers") as avoidable preferences within the meaning of § 547 of the Code (the "Preference Claims").

3. These Welsh Carson Parties challenged the Plan Administrator's ability to establish his <u>prima facie</u> case as to the Preference Claims, including challenging his allegation that the Welsh Carson Parties were "insiders" and that the Debtors were insolvent at the time of each of the Transfers. These Welsh Carson Parties also asserted a series of affirmative defenses to the Preference Claims, including that (a) the Transfers were made in the ordinary course of business, (b) the Transfers were part of contemporaneous exchanges for new value provided by certain Welsh Carson Parties to the Debtors, and (c) certain Welsh Carson Parties provided subsequent new value to the Debtors after receiving the Transfers.

4. The parties have engaged in more than two years of oral and written discovery, which was consolidated for all of the Preference Adversaries. The parties took 11 depositions of fact witnesses. In addition, the parties each identified experts on the issues of insolvency, ordinary course of business and the value of the call options that Welsh VI and Welsh VII had received from the Debtors. The experts each prepared reports and each was deposed.

5. On February 28, 2005, these Welsh Carson Parties moved for partial summary judgment on the issue of whether preferred stock issued by the Debtors could be treated as a liability for purposes of the Plan Administrator's expert's solvency analysis (the "Summary Judgment Motion"). These Welsh Carson Parties argued that, if the Debtors' preferred stock was not a liability, the Debtors were solvent at all times through November 1, 2000. The Plan Administrator disputed this contention and was prepared to file an opposition to the Summary Judgment Motion. However, if the Summary Judgment Motion were successful, the value of the Preference Claims would have been substantially reduced.

6. Trial in the Preference Adversaries was scheduled to begin on April 11, 2005 and run for at least four days. Absent the Settlement, pre-trial submissions were scheduled to be filed and exchanged beginning March 17, 2005 and concluding April 6, 2005, including lists of witnesses and exhibits to be presented at trial, lists of interrogatories and depositions to be submitted for trial, trial briefs, motions in limine, and stipulations, among other preparations. Preparing for and conducting this trial would have been expensive and burdensome for both sides and for this Court. Such efforts and costs have been spared through the Settlement.

7. If the Preference Adversaries were tried, there would be significant issues in dispute. The Welsh Carson Parties intended to contest, among other things, whether they were insiders and whether the Debtors were insolvent at the time of each of the Transfers. The Welsh Carson Parties also intended to argue that they had meritorious ordinary course of business, contemporaneous exchange for new value and subsequent new value defenses to the Preference Claims. The Plan Administrator was ready to respond to each of these arguments. However, had the Welsh Carson Parties prevailed on one or more of these arguments, the Plan Administrator's recoveries for the Debtors' unsecured creditors would have been significantly reduced, if not eliminated.

**The Settlement Resolves The**
**Alleged Breach of Duty Adversaries**

8. On August 28, 2002, Highland Capital Management, L.P., and various funds managed by Highland Capital Management, L.P. (collectively "Highland") commenced an action against various of the Welsh Carson Entities, among others, captioned <u>Highland Capital Management, L.P., et al. v. Welsh, Carson, Anderson & Stowe, et al.</u>, Case No. 02-07933, in the District Court of Dallas County, Texas (the "Highland Proceeding").

9. On September 27, 2002, the Highland Proceeding was removed to the United States District Court for the Northern District of Texas. On June 25, 2003, the Highland Proceeding was transferred to this Court.

10. On or about February 13, 2004, the Welsh Carson Parties involved in the Highland Proceeding filed their answer in the Highland Proceeding, denying all claims and raising a series of affirmative defenses.

11. On or about November 3, 2004, this Court entered an order (the "Consolidation Order") consolidating the Highland Proceeding with a related declaratory judgment action filed by these Welsh Carson Parties against Highland and the Plan Administrator under Adv. Proceeding No. 03-4577-293 (the "WCAS Declaratory Suit") and consolidated under that case number (consolidated as the "Alleged Breach of Duty Adversaries"). In the Alleged Breach of Duty Adversaries, the Plan Administrator asserted that Highland's claims against these Welsh Carson Parties belong to the Debtors' estates, and that, if the facts alleged by Highland are true, the Plan Administrator has standing to sue these Welsh Carson Parties on behalf of all of the Debtors' creditors for various claims, including claims that Highland purported to bring on its own behalf, as well as additional claims, including for alleged breaches of fiduciary duty. The Consolidation Order also realigned the parties so that the Plan Administrator and Highland are co-plaintiffs and these Welsh Carson Parties are defendants.

5

12. As detailed below, all of the claims that Highland has attempted to pursue on its own behalf are claims that belong exclusively to the Plan Administrator, based on alleged harm to the Debtors and their creditors as a whole. Under the Plan, the Plan Administrator is the sole party who has the power to bring these actions. An individual creditor such as Highland cannot usurp the power of the Plan Administrator by attempting to pursue claims it has no authority to pursue under the Plan and settled law.

13. That Highland asserts claims belonging to the Plan Administrator acting on behalf of all of the Debtors' creditors is clear from Highland's preliminary statement in its complaint in the Highland Proceeding, which provides:

> Defendant Welsh and its affiliates owned a controlling share of two companies – Bridge and Defendant SAVVIS. Upon realizing that Bridge was in financial trouble, Defendant Welsh made a decision to secretly sacrifice Bridge for the benefit of Savvis. Specifically, Defendant Welsh stripped Bridge of valuable assets and transferred those assets to Savvis for the benefit of Welsh and related entities. Additionally, during this time, Defendants lied to Plaintiffs about a potential sale of Bridge so that Welsh could loot Bridge's assets while stalling long enough to work out a separate deal with a potential buyer whereby Welsh would obtain benefits at the expense of Plaintiffs. As a result, by the time Bridge filed for bankruptcy, Plaintiffs had lost millions of dollars.

Plaintiffs' Original Petition in Highland Proceeding ("Highland's Petition"), attached as Exhbit 2, at 2. Any alleged looting or stripping of assets of the Debtors done at the direction of or with the knowledge of the Welsh Carson Parties impacted all of the Debtors' creditors.

14. The body of Highland's Petition bears out that Highland seeks to bring claims that belong instead to the Plan Administrator, acting on behalf of creditors as a whole. Highland asserts that the Welsh Carson Parties controlled the Debtors (Ex. 2 at ¶25) and that after the Debtors acquired Savvis, Welsh began to loot the Debtors. As Highland asserts:

> When it became evident that Bridge's prospects were dim, but that Savvis, owned by Bridge had better prospects (including an upcoming IPO), Welsh began a series of transactions designed to install its employees and partners to the Bridge Board of Directors, to transfer the stock of Savvis out of Bridge's control and into the hands of Welsh and Welsh-controlled entities, and transfer other valuable assets, such as cash, out of Bridge.

6

(Ex. 2 at ¶32). Highland claims that, as the Debtors began to face financial problems, the Welsh Carson Parties put their own employees in control of the Debtors. (Ex. 2 at ¶¶37-39). Highland also asserts that, as the Debtors contemplated bankruptcy, the Welsh Carson Parties caused the Debtors to transfer more than $18,000,000 from the Debtors to Savvis. (Ex. 2. at ¶¶42-44).[2]

15.     Highland asserts that certain negligent and fraudulent misrepresentations were made to it by the Welsh Carson Parties, but even if true, as explained below, these alleged misrepresentations resulted in no injury to Highland specifically that was not true of creditors as a whole. Highland asserted that the Welsh Carson Parties represented that the Debtors could not be sold unless Highland agreed to take 17¢ on every dollar it was owed by the Debtors. (Ex. 2 at ¶47). However, Highland rejected that offer and did not restructure its debt at 17¢ on the dollar. Highland also claims that the Welsh Carson Parties represented there were no potential buyers for the Debtors when there in fact were and that had Highland known this it would have forced the Debtors' bankruptcy earlier. (Ex. 2 at ¶¶48-53). Highland notes that by causing a delay in the filing of bankruptcy, the Welsh Carson Parties were able to strip the Debtors' assets and divert them to Savvis. (Ex. 2 at ¶¶54-55). Again, any such diversion of assets injured the Debtors' creditors as a whole and not just Highland.

16.     Based on these same allegations, Highland attempts to assert claims for itself for negligent and fraudulent misrepresentation, tortious interference with contract, conspiracy to commit a tortious interference and fraud, aiding and abetting fraud and tortious interference and piercing the corporate veil. Based on the same allegations, the Plan Administrator has asserted grounds for additional claims, including for breach of fiduciary duty.

---

[2] Any attempt by Highland to pursue its alleged claims against the Welsh Carson Parties could be barred by this Court's release of Savvis under the Plan.

17. The parties have exchanged document requests and interrogatories in the Alleged Breach of Duty Adversaries. Certain documents specific to those actions have been produced. The parties have agreed that discovery taken in the Preference Adversaries can be used in the Alleged Breach of Duty Adversaries. However, the parties have not begun formal oral deposition discovery or expert discovery in the Alleged Breach of Duty Adversaries. Absent the Settlement, substantial discovery and other litigation would remain to be completed. The costs of litigating the Alleged Breach of Duty Adversaries would have been substantial.

18. The Settlement requires dismissal with prejudice of the Alleged Breach of Duty Adversaries and a full release of all claims that have been brought and could have been brought against the Welsh Carson Parties in that litigation, including all claims brought by both Highland and the Plan Administrator. Based on the facts set forth above and for the reasons detailed below, the Plan Administrator has full and complete authority to settle all claims in the Alleged Breach of Duty Adversaries, as all claims at issue belong solely to the Plan Administrator.

**The Settlement Resolves The Plan Administrator's**
**Objection To The Welsh Claim**

19. On June 29, 2001, various Welsh Carson Entities filed the Welsh Claim, a proof of claim in the amount of $398,085,262.60 against the Parent Estate. On August 14, 2004, the Plan Administrator objected to the Welsh Claim.

20. Under the Settlement, the Plan Administrator would withdraw his objection to the Welsh Claim and it would be deemed allowed as a pre-petition, unsecured, non-priority claim solely against the Parent Estate. The Plan Administrator has informed the Welsh Carson Parties and the Welsh Carson Parties expressly acknowledge pursuant to the Settlement that to date there has been no distribution of any sort out of the Parent Estate to unsecured creditors under the Plan, that based on current projections and forecasts, the Plan Administrator does not intend to make any such distribution, and that the $9 million received by the Plan Administrator under the

8

Settlement does not modify the aforementioned projections and forecasts and will therefore provide no current basis for such a distribution. Moreover, nothing in the Settlement is intended to modify or amend the Plan or the Plan Administrator Agreement.

**The Settlement Resolves**
**The DPW Adversary and the DPW Claim**

21.     On January 9, 2004, the Plan Administrator filed the DPW Adversary against DPW, captioned <u>Peltz v. Davis Polk & Wardwell</u>, Adv. Proceeding No. 04-4002-293, in this Court, to recover $393,464.25 in payments made by the Debtors to DPW in the 90 days before the Petition Date as avoidable preferences under § 547 of the Code.

22.     On March 4, 2004, DPW filed its answer in the DPW Adversary denying the Plan Administrator's allegations and raising a series of affirmative defenses. While the Plan Administrator believes he has valid claims against DPW, based on its defenses, DPW has informed the Plan Administrator that it believes the preference claims against DPW are meritless and that the Plan Administrator would not achieve any material recovery on such claims if litigated. By agreement of the parties, litigation of the DPW Adversary has been stayed pending resolution of the Preference Adversaries. The DPW Adversary will be dismissed with prejudice pursuant to the Settlement.

23.     On June 29, 2001, DPW filed the DPW Claim, a claim for $146,228.01 against the Parent Estate. On August 11, 2003, the Plan Administrator objected to the DPW Claim. Under the Settlement, the Plan Administrator would withdraw his objection to the DPW Claim and it would be deemed allowed as a pre-petition, unsecured, non-priority claim solely against the Parent Estate.

**The Settlement Resolves**
**The Motion To Compel**

24.     On February 28, 2005, various of the Welsh Carson Entities filed a motion, pursuant to § 1142 of the Code, to compel the Plan Administrator to file with the Court certain

9

reports regarding payments to professionals and other information. On March 10, 2005, the Plan Administrator filed his opposition to the Motion to Compel. The Motion to Compel was scheduled to be presented to the Court on March 28, 2005. Pursuant to the Settlement, the Welsh Carson Parties will withdraw the Motion to Compel.

## BASIS FOR RELIEF

**Approval Of The Settlement Is In The Best Interests Of The Debtors' Estates**

25. Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed settlement or compromise. Rule 9019 vests this Court with broad authority to approve or disapprove all compromises and settlements affecting the bankruptcy estates. See, e.g., In re Bates, 211 B.R. 338, 343 (Bankr. D. Minn. 1997). The decision whether to accept or reject a compromise lies within the sound discretion of the court. See In re Apex Oil, Co. 92 B.R. 847, 866 (E.D. Mo. 1988). Such compromises are a "normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). Approval of the settlement is appropriate if the settlement is in the "best interests of the estate," In re Mohr, 224 B.R. 722, 727-28 (E.D. Mo. 1998), which, in turn, is determined by judging whether the settlement is "fair and equitable." TMT Trailer Ferry, 390 U.S. at 424.

26. In the Eighth Circuit, the four criteria generally relevant in determining whether to approve a settlement include: (1) the probability of success in the litigation; (2) the likely difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views on the premises. See Apex Oil, 92 B.R. at 867. To approve a settlement under Bankruptcy Rule 9019, the Court need only determine that the proposed settlement meets the lowest level of

reasonableness. See In re New Concept Housing, Inc., 951 F.2d 932, 938 (8th Cir. 1991) (internal citations omitted).

27. In making its determination, a court should not substitute its own judgment for that of the debtor. Apex Oil, 92 B.R. at 867. Moreover, it is not necessary for the court to conduct a mini-trial of the facts or the merits underlying the dispute. New Concept Housing, 951 F.2d at 939. The court does not have to resolve all factual disputes, it need only be sufficiently informed of the facts necessary to enable it to evaluate the settlement. See id. at 938-39. The Court must also consider the principle that the law favors compromise. See In re Lakeland Dev. Corp., 48 B.R. 85, 90 (Bankr. D. Minn. 1985).

28. Here, approval of the Settlement and the terms and conditions contained therein is in the best interests of the Debtors' estates and their creditors, and meets the standards set forth above. First, the Plan Administrator's probability of success in the litigation weighs toward approval of the Settlement. The Settlement results in the payment of a guaranteed $9 million to the Plan Administrator for the benefit of the Debtors' creditors. While the Plan Administrator believes that he would prevail at trial on the Preference Claims, the Welsh Carson Parties dispute that view and have raised numerous defenses that, if successful, could reduce or eliminate any recovery on the Preference Claims. The claims advanced against the Welsh Carson Parties in the Alleged Breach of Duty Adversaries have also been vigorously contested by the Welsh Carson Parties. The Welsh Carson Parties have denied the material allegations in the Alleged Breach of Duty Adversaries and have raised numerous affirmative defenses. The Plan Administrator has considered the complexity of the issues raised in the Alleged Breach of Duty Adversaries and the difficulties and risks attendant to such adversaries in evaluating whether to enter into the Settlement. Given the uncertainties of litigation, the Plan Administrator believes it is reasonable and appropriate to accept a certain $9 million, an amount that will substantially augment distributions for the benefit of the Debtors' creditors.

11

29. Second, the Settlement resolves very complex litigation and saves the Debtors' estates the substantial fees and expenses attendant to litigating the Preference Claims, the Alleged Breach of Duty Adversaries and the other litigation resolved under the Settlement. Absent the Settlement, significant and costly trial preparation would remain in the Preference Adversaries. In addition, litigating the Alleged Breach of Duty Adversaries would have imposed considerable expense on the Debtors' estates. Moreover, the Settlement avoids the delays attendant to the litigation process, including a likely appeal by the Welsh Carson Parties in the event that the Plan Administrator prevails in the Preference Cases and/or the Alleged Breach of Duty Adversaries.

30. Third, the Settlement reflects the reasoned business judgment of the Plan Administrator after many hours of litigation and is supported by the judgment of the Debtors' creditors. The Settlement was reached after thorough analysis of the facts and legal issues presented and detailed arms-length negotiation among and between the Plan Administrator and the Welsh Carson Parties and between the Plan Administrator and DPW. Moreover, the Settlement has been approved by the Bridge Plan Committee, comprised of many of the Debtors' largest creditors.

31. Based on the above, the terms of the Settlement fall within a reasonable range of litigation possibilities and approval of the Settlement is in the best interests of the Debtors' creditors. This Court therefore should approve the Settlement.[3]

---

[3] Under the Plan and the Plan Administrator Agreement, which is Exhibit A to the Plan, the Plan Administrator has the power and authority to settle and compromise all litigation brought on behalf of the Debtors' estates. Even though Court approval is not required under the Plan, given the amounts at issue and the fact that the Settlement resolves several of the more significant matters in this bankruptcy, the Plan Administrator believes that Bankruptcy Court approval of the Settlement is appropriate.

011.1254378.4

**All Claims In The Alleged Breach Of Duty
Adversaries Should Be Dismissed
<u>With Prejudice As Part Of The Settlement</u>**

        32.    As all of the claims alleged by Highland in the Alleged Breach of Duty Adversaries concern alleged injury caused by the Welsh Carson Parties to the Debtors and, therefore, to the Debtors' creditors as a whole, they are properly raised only by the Plan Administrator. The Plan expressly provides that the Plan Administrator has the exclusive right on behalf of the Debtors to pursue any and all claims of the Debtors arising before or after the Commencement Date, and to then marshal any recovered assets for distribution among all of the Debtors' creditors. Section 11.05 of the Plan provides that the Debtors have the:

> exclusive right to enforce and all present or future rights, claims, defenses, counterclaims or causes of action against any Entity and any and all rights of any kind and all of the Debtors that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

In addition, under Section 4.1 of the Plan Administrator Agreement, the Plan Administrator has the sole authority to act for the Debtors, including the right to pursue all "Retained Actions" pursuant to Sections 6.01 and 11.05 of the Plan.

        33.    Case law confirms that the claims raised in the Alleged Breach of Duty Adversaries belong solely to the Plan Administrator as the representative of the Debtors' estates. "[I]t is clear that causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate," and are thus enforceable by a bankruptcy plan administrator. <u>In re Ozark Restaurant Equipment Co., Inc.</u>, 816 F.2d 1222, 1225 (8th Cir. 1987); <u>see</u> <u>also</u> <u>Reliance Ins. Co. v. Weis</u>, 148 B.R. 575, 581 (E.D. Mo. 1992), <u>aff'd,</u> 5 F.3d 532 (8th Cir. 1993) ("[T]he estate succeeds to any right of action a debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director, and the trustee has the authority to bring such actions on behalf of

the debtor corporation."); In re Howe Grain, Inc., 176 B.R. 515, 519 (Bankr. D. Neb. 1994) (claims of a corporation against its officers and directors constitute property of the bankruptcy estate and are vested in the trustee).

34. Where, as here, an action in a bankruptcy case belongs to creditors as a whole, courts have barred individual creditors from bringing actions of the kind Highland is attempting to pursue in the Alleged Breach of Duty Adversaries. See, e.g., In re Van Dresser Corp., 128 F.3d 945 (6th Cir. 1997) (creditor could not bring suit against debtor's bank, its officer and president of debtor's subsidiary corporation alleging that they had bilked parent and its subsidiary out of funds causing subsidiaries and parent to file bankruptcy, as such claim was derivative of harm to the company as a whole and therefore belonged to its estate); In re Ionosphere Clubs, Inc., 17 F.3d 600, 604 (2d Cir. 1994) (claims against former officers and directors for breach of fiduciary duty and tortious interference with contract were estate property); St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 700-02 (2d Cir. 1989) (guarantor of debtor's bonds lacked standing to bring an independent action against corporate parent alleged to have stripped the debtor of assets as action was estate property); Delgado Oil Co. v. Torres, 785 F.2d 857, 861-62 (10th Cir. 1986) (after a corporation's bankruptcy, its creditor could not sue director for unlawful preferential payments and breach of fiduciary duty, as action was vested solely with debtor-in-possession); In re MortgageAmerica Corp., 714 F.2d 1266, 1275 (5th Cir. 1983) (after debtor corporation's bankruptcy, creditor could not pursue action under Texas Fraudulent Transfers Act against controlling shareholder of corporation, as action was vested solely in trustee); National Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439 (sureties of debtor could not pursue claims against purchaser of debtor's assets where sureties' causes of action, including for tortious interference with contract and conspiracy, were dependent on a showing of fraud and similar in kind to claims vested exclusively with the trustee); Barnett v. Stern, 93 B.R. 962, 968-69 (N.D. Ill. 1988), rev'd on other grounds, 909 F.2d

14

973 (7th Cir. 1990) (creditors could not sue against debtor and son for fraud and RICO for concealing assets, as trustee was proper party to sue once debtor filed for bankruptcy).

35. Preventing creditors from bringing claims that belong to the estates as a whole serves important policy interests. "The Trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." Koch Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1342-43 (7th Cir. 1987). As the Court noted in National American Insurance:

> Reserving the action for the Trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process. If it were otherwise there would be a "multi-jurisdictional rush to judgment whose organizing principal could only be first-come first-served."

187 F. 3d at 442 (citing MortgageAmerica Corp., 714 F.2d at 1274). Moreover, allowing an individual creditor to pursue recoveries that belong to the estates as a whole would disadvantage the remaining creditors. National American Insurance, 187 F.3d at 442.

36. For these reasons, the Plan Administrator has the exclusive authority to litigate and/or settle the Alleged Breach of Duty Adversaries. Since he believes that settlement of the Alleged Breach of Duty Adversaries is in the best interests of creditors and the estates for the reasons outlined above, and since the Settlement is conditional on the Alleged Breach of Duty Adversaries' being dismissed with prejudice, the Plan Administrator believes such dismissal with prejudice is warranted.

37. Highland benefits by the Settlement in the same way as the Debtors' other creditors. As a secured creditor, it will share in the proceeds of the Settlement as contemplated by the Plan.

38. In further support of this Motion, the Plan Administrator submits the affidavit of Scott P. Peltz, attached hereto as Exhibit 3.

15

## **CONCLUSION**

**WHEREFORE**, the Plan Administrator seeks the entry of a Stipulation and Order, in the form attached as Exhibit 1:  (1) authorizing the Plan Administrator to enter into the Settlement; (2) approving the terms of the Settlement in their entirety; (3) authorizing the Plan Administrator to take such actions as may be necessary and appropriate to implement the terms of the Settlement; (4) dismissing with prejudice all claims against the Welsh Carson Parties in the above-captioned adversary proceedings; and (5) granting such other and further relief as the Court deems just and proper.

Dated:  March 22, 2005                                   FOLEY & LARDNER LLP


By:     /s/ David B. Goroff
    Mark L. Prager (IL #2246503)
    David B. Goroff (IL #6190039)
    Michael J. Small (IL #6207645)
    FOLEY & LARDNER LLP
    321 N. Clark Street, Suite 2800
    Chicago, Illinois  60610
    (312) 832-4500
    (312) 832-4700 facsimile
    mprager@foley.com
    dgoroff@foley.com
    msmall@foley.com

    Attorneys for the Plan Administrator

16

## **CERTIFICATE OF SERVICE**

David B. Goroff hereby certifies that a true and correct copy of the Consent Motion for Entry of an Order Approving Settlement and Compromise of All Claims and Controversies as to Welsh Carson Parties and Davis Polk & Wardwell and for Dismissal with Prejudice of Adv. Proc. Nos. 03-4577-293, 03-4099-293, 03-4100-293, 03-4101-293, 03-4102-293, 03-4103-293 and 04-4022-293 was served via overnight delivery upon the following parties on the 22nd day of March, 2005.

                                        /s/ David B. Goroff

| | |
|---|---|
| Terry Reicher<br>National Association of Securities Dealers, Inc.<br>1735 K Street, N.W.<br>Washington D.C. 20006<br>Phone: (202) 728-8967<br>Fax: (202) 728-8894<br>terri.reicher@nasd.com | Sankar Krishnan<br>Alvarez and Marsal<br>599 Lexington Ave., Suite 2700<br>New York, NY 10022<br>Phone: (212) 759-4433<br>Fax: (212) 759-5532<br>skrishnan@alvarezandmarsal.com |
| Alex Moglia<br>Alex D. Moglia & Associates, Inc.<br>1325 Remington Road, Suite H<br>Schaumburg, IL 60173<br>Phone: (847) 884-8282<br>Fax: (847) 884-1188<br>alex.moglia@starnetwx.net | Scott P. Peltz<br>Plan Administrator<br>American Express Tax and Business Services, Inc.<br>1 South Wacker Drive, Suite 800<br>Chicago, Illinois 60606<br>scott.p.peltz@aexp.com |
| Gregory D. Willard<br>Lloyd A. Palans<br>David M. Unseth<br>Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600-BIS<br>St. Louis, Missouri 63102<br>gdwillard@bryancave.com<br>lapalans@bryancave.com<br>dmunseth@bryancave.com | Sam Ory<br>J. Eric Ivester<br>Skadden, Arps, Slate, Meagher & Flom, LLP<br>333 West Wacker Drive<br>Chicago, Illinois 60606<br>Fax: (312) 407-0411<br>sory@skadden.com<br>eivester@skadden.com |
| Dana McWay<br>Clerk of the U.S. Bankruptcy Court<br>For the Eastern District of Missouri<br>Thomas F. Eagleton U.S. Courthouse<br>111 South Tenth Street, 4th Floor<br>St. Louis, Missouri 63102<br>Fax: (314) 244-4990 | Office of the United States Trustee<br>Thomas F. Eagleton U.S. Courthouse<br>111 South Tenth Street, Suite 6353<br>St. Louis, Missouri 63102<br>Fax: (314) 539-2990 |
| Frank S. Moseley<br>Benjamin S. Kaminetzky<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, New York 10017<br>Phone: (212) 450-4000<br>Fax: (212) 450-3259<br>frank.moseley@dpw.com<br>ben.kaminetzky@dpw.com | Paul B. Lackey<br>Scott Hershman<br>Michael P. Aigen<br>Lackey Hershman, LLP<br>3102 Oak Lawn Avenue, Suite 700<br>Dallas, Texas 75219<br>Phone: (214) 560-2201<br>Fax: (214) 560-2203<br><br>Attorneys for each of Highland Capital Management, L.P., Pamco Cayman, Ltd., ML CBO IV (Cayman) Ltd., Highland Legacy Limited, KZH Highland –2 LLC, KZH Pamco LLC, SRV – Highland, Inc., and Gleneagles Trading LLC |

011.1254378.4

| | |
|---|---|
| Steven Cousins<br>David Going<br>Armstrong Teasdale LLP<br>One Metropolitan Square, Suite 2600<br>211 North Broadway<br>St. Louis, Missouri 63102-2740<br>(314) 621-5070<br>(314) 621-5065 Facsimile | Peter D. Kerth<br>Gallop Johnson & Neuman, LC<br>101 S. Hanley, Suite 1600<br>St. Louis, Missouri 63105<br>(314) 615-6000<br>(314) 615-6001 Facsimile<br><br>Attorneys for each of Highland Capital Management, L.P., Pamco Cayman, Ltd., ML CBO IV (Cayman) Ltd., Highland Legacy Limited, KZH Highland –2 LLC, KZH Pamco LLC, SRV – Highland, Inc., and Gleneagles Trading LLC |

18

011.1254378.4