UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| BRIDGE INFORMATION SYSTEMS, INC., ) | |
| et al., ) | |
| ) | |
| Debtors, ) | |
| _____ ) | No. 4:05CV957-SNL |
| ) | |
| HIGHLAND CAPITAL MANAGEMENT, ) | |
| L.P., PAMCO CAYMAN, LTD., ML CBO IV ) | |
| (CAYMAN) LTD., HIGHLAND LEGACY ) | |
| LIMITED, KZH HIGHLAND-2 LLC, ) | |
| KZH PAMCO LCC, SRV-HIGHLAND, INC. ) | |
| and GLENEAGLES TRADING, L.L.C., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| WELSH, CARSON, ANDERSON & STOWE, ) | |
| VI, L.P., WELSH, CARSON, ANDERSON & ) | |
| STOWE, VII, L.P., WELSH, CARSON, ) | |
| ANDERSON & STOWE, VIII, L.P., ) | |
| WELSH, CARSON, ANDERSON & ) | |
| STOWE, IX, L.P., WCAS CAPITAL ) | |
| PARTNERS II, L.P., THOMAS E. ) | |
| McINERNEY and PATRICK J. WELSH, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Highland Capital Management, L.P., and related Highland entities (Pamco Cayman Ltd., ML CBO IV (Cayman) Ltd., Highland Legacy Limited, KZH Highland-2 LLC, KZH Pamco LLC, SRV-Highland, Inc., and Gleneagles Trading LLC ) (hereinafter collectively Highland) appeal from an order entered in the United States Bankruptcy Court for the Eastern District of Missouri granting the consent motion filed by Scott P. Peltz, the Chapter 11 Plan Administrator

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(hereinafter plan administrator) for the estates of BIS Administration, Inc. (f/k/a Bridge Information Systems, Inc.), and certain of its subsidiaries (hereinafter collectively Bridge or the debtor), to approve and compromise all of the debtor's claims against certain Welsh Carson entities (Welsh, Carson, Anderson & Stowe, L.P., Welsh, Carson, Anderson & Stowe VII, L.P., Welsh, Carson, Anderson & Stowe VIII, L.P., Welsh, Carson, Anderson & Stowe IX, L.P., WCAS Capital Partners II, L.P., Thomas E. McInerney, Patrick J. Welsh) (hereinafter collectively Welsh Carson) and Davis Polk & Wardwell (hereinafter Davis Polk) and dismissing with prejudice Highland's state law claims against Welsh Carson. In re Bridge Information Systems, Inc., No. 01-41593-293 (Bankr. E.D. Mo. May 23, 2005) (memorandum opinion).

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. 8001(a), which provide that a party may take an appeal from an order of a bankruptcy judge. The memorandum order was filed May 23, 2005, and the notice of appeal was timely filed on June 1, 2005. For reversal, Highland argues that the bankruptcy court erred in holding that these state law claims belong exclusively to the plan administrator because the alleged wrongdoing directly injured Bridge and any injury to Highland was derivative of the direct injury to Bridge. For the reasons discussed below, the decision of the bankruptcy court is affirmed.

BACKGROUND FACTS

As the plan administrator sought dismissal on the ground that Highland lacks standing to assert these state law claims, the bankruptcy court accepted Highland's allegations as true and viewed the record in the light most favorable to Highland. Highland was a member of a lender group that provided millions of dollars of pre-petition credit to Bridge. Highland has a $65 million unsecured claim against the Bridge estate. Welsh Carson is a related group of limited

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

partnerships; in 1995 Welsh Carson acquired a controlling interest in Bridge, and in 1999 it caused Bridge to acquire SAVVIS Communications Corp. (hereinafter SAVVIS). Welsh Carson then caused Bridge to transfer 56% of Bridge's interest in SAVVIS to individual Welsh Carson partnerships in two separate transactions.

In September 2000 Bridge defaulted. Some of the general partners of the Welsh Carson partnerships, who were also officers and directors of Bridge, attempted to restructure Bridge's debt in order to avoid bankruptcy. According to Highland, the Welsh Carson general partners falsely represented to Highland that they had identified a potential purchaser for Bridge's assets if Highland would agree to restructure the debt (by accepting a payment of 17¢ per dollar of debt). The Welsh Carson general partners allegedly further stated to Highland that there were no other potential bidders for Bridge and that, if Highland refused to accept this proposal, they would cause Bridge to file for bankruptcy and then Highland would receive nothing.

Highland agreed to the proposal. However, the Welsh Carson general partners were unable to sell Bridge. In January 2001 Welsh Carson caused Bridge to transfer $18 million in cash to SAVVIS in two transactions, even though SAVVIS at the time owed Bridge $30 million. Welsh Carson and the Welsh Carson general partners controlled both Bridge and SAVVIS. In February 2001, Highland filed an involuntary petition against Bridge in the bankruptcy court. Bridge then filed a voluntary petition under Chapter 11. The bankruptcy court then dismissed the involuntary petition as moot.

In August 2002, Highland filed an action against Welsh Carson, the Welsh Carson general partners, and SAVVIS in state court in Texas, alleging state law tort claims (fraudulent misrepresentation, negligent misrepresentation, tortious interference of contract, conspiracy to

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

commit tortious interference, conspiracy to commit fraud, aiding and abetting fraud, aiding and abetting tortious interference). Highland asserted that Welsh Carson and the Welsh Carson general partners knew that there was no potential buyer for Bridge and that, if Highland had known that, it would have filed an involuntary petition before Bridge transferred cash to SAVVIS. Highland also asserted a veil-piercing claim (asserting that Bridge was merely the alter ego of Welsh Carson and the Welsh Carson general partners). Highland claimed that Welsh Carson, by causing a delay in the filing of the bankruptcy petition, was able to "strip Bridge of its assets" (the $18 million in pre-petition transfers) and divert them to SAVVIS. SAVVIS, with the consent of Welsh Carson and the Welsh Carson general partners, removed the state court action to the United States District Court for the Northern District of Texas and requested that the district court transfer venue to the bankruptcy court (in the Eastern District of Missouri) because the claims in the state court action belonged to the Bridge estate. Highland sought to remand the state court action back to the state court. In June 2003 the federal district court transferred venue to the bankruptcy court and denied the motion to remand.

In the meantime, in May 2003, Welsh Carson and the Welsh Carson general partners filed a declaratory judgment action in the bankruptcy court. Welsh Carson and the Welsh Carson general partners argued that the injury of which Highland complained was derivative of Bridge's direct injury. Therefore, they argued the claims in the state court action did not belong to Highland and instead belonged to the Bridge estate and the plan administrator. Highland filed a motion to dismiss or transfer the case back to the state court. In September 2003 the bankruptcy court denied the motion to dismiss or transfer.

The parties agreed to consolidate the state court action and the declaratory judgment

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

action into a single adversary proceeding in bankruptcy court. The bankruptcy court realigned the parties: Highland and the plan administrator were designated as the plaintiffs, and Welsh Carson and the Welsh Carson general partners were designated as the defendants. The state court complaint became the complaint in the consolidated adversary proceeding.

In February 2003 the plan administrator filed in the bankruptcy court several related adversary proceedings against certain Welsh Carson entities to recover certain payments as avoidable preferences. Welsh Carson vigorously defended the claims and raised affirmative defenses. After discovery and other pretrial proceedings, trial was scheduled to begin in the spring of 2005 and was expected to last about a month. However, in January 2004, the plan administrator filed an adversary proceeding against Davis Polk to recover as avoidable preferences certain payments made by Bridge. In March 2004 Davis Polk denied the allegations and raised affirmative defenses. (The plan administrator has filed other adversary proceedings that are not at issue in this appeal.)

On March 22, 2005, the plan administrator filed the consent motion for entry of an order approving a settlement and compromise of all claims and controversies as to Welsh Carson and Davis Polk and to dismiss with prejudice the avoidable preference claims. Under the proposed settlement, Welsh Carson will pay $9 million to the Bridge estate. The unsecured creditors' committee filed a response to the consent motion in support of the proposed settlement. The plan administrator filed an affidavit in support of the consent motion, outlining his experience in litigating large preference claims and stating that, in his opinion, the proposed settlement was in the best interest of the Bridge estate. Only Highland objected to the consent motion. Highland did not dispute that the proposed settlement met all of the standards of Fed. R. Bankr. 9019 and

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

was in the best interest of the Bridge estate. Highland argued that the proposed settlement could not dispose of the state law claims because those claims belonged to it and not the Bridge estate.

BANKRUPCTY COURT ORDER

After briefing and oral arguments, the bankruptcy court found that the proposed settlement was in the best interest of the Bridge estate and that Highland's claims were properly dismissed with prejudice because those claims did not belong to it and instead were the exclusive property of the Bridge estate. The bankruptcy court applied Missouri law, including Missouri conflicts law, to determine that the tort claims were property of the Bridge estate and that only the plan administrator had standing to assert those claims. The bankruptcy court examined the relationship between the injury and Bridge and concluded that Bridge was the party (not Highland) that was directly injured by Welsh Carson's wrongdoing. Slip op. at 11. The bankruptcy court acknowledged that Welsh Carson had allegedly made the misrepresentations directly to Highland, but noted that Bridge was the party directly injured by that misrepresentation (because had the funds not been transferred from Bridge to SAVVIS, the funds would have benefitted all of Bridge's creditors, not just Highland). Id. The bankruptcy court further noted that, under Missouri law, only the corporation, not its shareholders or creditors, can bring an action for its direct injury. Id. at 12.

The bankruptcy court also determined that, under Missouri law, the veil-piercing claim was the property of the Bridge estate, id. at 16, and rejected Highland's argument that only a third party creditor could assert a veil-piercing claim, citing In re Ozark Restaurant Equipment Co., Inc. (*Mixon v. Anderson*), 816 F.2d 1222 (8th Cir.), cert. denied, 484 U.S. 848 (1987). The bankruptcy court pointed out that the analysis in that case involved the law of Arkansas, not

6

Missouri, and that the court's opinion specifically noted that the outcome of the case could have been different if another state's substantive law applied. Slip op. at 14-15, citing In re Ozark Equipment Co., 816 F.2d at 1226 n.7. See Kalb, Voorhis & Co. v. American Financial Corp., 8 F.3d 130, 134 (2d Cir. 1993) (holding that a trustee had standing to assert veil-piercing claims that under applicable state law belonged solely to the corporation and that, when carefully read, Mixon v. Anderson does not support the proposition (for which it is often cited) that a trustee lacks standing to assert veil-piercing claims that belong to the bankruptcy estate).

The bankruptcy court also agreed with the plan administrator's contention that the consolidated adversary proceeding was "in essence" a fraudulent conveyance action that only he has standing to bring. Id. at 16 and 17, citing National American Insurance Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999) (holding that sureties of debtor, as individual creditors of debtor, lacked standing to pursue claims that were similar in nature and purpose to fraudulent conveyance claims that might be brought by trustee), cert. denied, 528 U.S. 1156 (2000). The bankruptcy court granted the plan administrator's motion to compromise claims and dismissed with prejudice Highland's claims against Welsh Carson. This appeal followed.

DISCUSSION

For reversal, Highland argues that the bankruptcy court erred in deciding that Highland lacks standing to assert the state law claims because those claims are property of the Bridge estate. Highland argues that, under Missouri law, the state law claims for damages caused to it by Welsh Carson and others are "personal" to Highland and thus belong to Highland, and not the Bridge estate, and that the plan administrator can only raise and settle claims that belong to the Bridge estate, not claims that belong to Highland. Highland argues that it and Bridge each have similar

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

but separate claims against Welsh Carson, which are not mutually exclusive, citing In re Educators Group Health Trust, 25 F.3d 1281, 1285-86 (5th Cir. 1994), and Holloway v. Skinner, 898 S.W.2d 793, 794-95 (Tex. 1995). See also Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 431-34 (1972); In re Mar-Kay Plastics, Inc., 234 B.R. 473 (W.D. Mo. 1999); In re Inland Shoe Manufacturing Co., 90 B.R. 981 (Bankr. E.D. Mo. 1988). For that reason, Highland argues the plan administrator has no standing to compromise and settle its claims. In addition, Highland argues that claims against a third party for defrauding a corporation with the cooperation of corporate management accrues to creditors, not the misbehaving corporation, citing Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir. 1991) (holding trustee lacked standing to pursue fraud claims on behalf of note holders against third parties for making bad trades which dissipated corporate funds).

Generally, "[a] decision to approve or disapprove a proposed settlement under Bankruptcy Rule 9019 is within the discretion of the bankruptcy judge." In re Trism, Inc., 282 B.R. 662, 666 (B.A.P. 8th Cir. 2002). Ordinarily, that decision would be reviewed for abuse of discretion. Id. at 667 (court must weigh four factors bearing on reasonableness of settlement, including likelihood of success in the litigation, difficulties in collection matters, complexity and expense of litigation, and interest of creditors and deference to their reasonable views). Highland does not challenge the reasonableness of the proposed settlement. Nor do the parties dispute that the proposed settlement is in the best interest of the bankrupt estate. Rather, the issue in the present case is a question of law, which we review de novo—what is property of the bankrupt estate? This is a recurring issue in bankruptcy litigation. Are these claims the property of the bankruptcy estate (Bridge) or the property of a third party creditor (Highland)? In other words, who has the

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

authority to raise these claims?  Bridge (the plan administrator) or Highland?

The plan administrator seeks to collect any money that may be owing to the bankrupt entity (which, in the present case, is Bridge).  "Under the Bankruptcy Code the trustee (here the plan administrator) stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d at 118.  The debtor's estate includes "legal and equitable interests of the debtor," 11 U.S.C. § 541(a), including causes of action belonging to the debtor at the commencement of the case. Mixon v. Anderson, 816 F.2d at 1225.  Bankruptcy courts have plenary power to determine the extent of the debtor's estate, including the authority to determine what causes of action "belong" to the debtor's estate. Id.  "[W]henever a cause of action 'belongs' to the debtor corporation, the trustee (here the plan administrator) has the authority to pursue it in bankruptcy proceedings." Id.

"The debtor's interest in property is determined by nonbankruptcy law, but the determination of what constitutes section 541 property is a federal question." Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1343 (7th Cir. 1987) (Koch Refining), cert. denied, 485 U.S. 906 (1988).  "Whether the rights belong to the debtor or the individual creditors is a question of state law." St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir. 1989) (citation omitted).  "Where, however, 'the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under Section 541(a) that are enforceable by the trustee [under Section 704(1)] (here the plan administrator).'" Mixon v. Anderson, 816 F.2d at 1225 (*citations omitted*).

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The bankruptcy court applies the law of the state in which it sits, including that state's choice of law rules. In re Payless Cashways, 203 F.3d 1081, 1084 (8th Cir. 2000). In the present case, Missouri is the forum state, and it applies the most significant relationship test. See, e.g., Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969) (banc) (tort claims). The Court agrees with the bankruptcy court and the parties that Missouri law applies to determine whether the tort claims and the veil-piercing claim are the property of the Bridge estate.

Case law discusses this recurring issue in terms of whether the claim is "personal" or "general." "A cause of action is 'personal' if the claimant [itself] is harmed and no other claimant or creditor has an interest in the cause." Koch Refining, 831 F.2d at 1348. "[P]ersonal claims are not property of the estate." In re E.F. Hutton Southwest Properties II, Ltd., 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989). "If the liability is to all creditors of the corporation without regard to the personal dealings . . ., it is a general claim. . . . [The trustee's] right to bring a claim 'depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues as to specific creditors." Id. at 1349 (*citations omitted*). "[A] single creditor may not maintain an action on [its] own behalf . . . if that creditor shares an injury common to all creditors and has personally been injured only in an indirect manner." Id. (*citations omitted*).

Unfortunately, as noted in Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994) (Chapter 7), the terms "personal" and "general" are not, in themselves, very "illuminating" to our analysis, but the distinction is important because "[w]hen a third party (Welsh Carson) has injured not the bankrupt corporation itself (Bridge) but a creditor (Highland) of that corporation, the trustee in bankruptcy (the plan administrator) cannot bring a suit against the third party." Id. "[T]here is a difference between a creditor's interest in the claims of the corporation against a

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

third party, which are enforced by the trustee (here the plan administrator), and the creditor's own direct—not derivative—claim against the third party, which only the creditor [itself] can enforce." Id.

This Court concludes that the bankruptcy court correctly decided that Highland lacked standing as a creditor to pursue tort and veil-piercing claims on behalf of the bankrupt debtor (Bridge) against a third party (Welsh Carson). The bankruptcy court properly found that these claims are exclusively the property of the Bridge estate.

"The test for determining whether a cause of action belongs to the estate requires the court to 'look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to corporation and creditors.'" In re E.F. Hutton Southwest Properties II, Ltd., 103 B.R. at 812, citing Koch Refining, 831 F.2d at 1349. "Property of the estate does not belong to any individual creditor." Kalb, Voorhis & Co. v. American Financial Corp., 8 F.3d at 132. Here, this Court agrees with the bankruptcy court's characterization of the injury alleged as general and common and property of the estate. Highland claimed that Welsh Carson improperly caused Bridge to transfer $18 million to SAVVIS. If Bridge had not transferred these funds, the funds would have been available to Bridge's many creditors, not just Highland. Bridge was directly injured by the wrongful transfers. Highland's injury was derivative of Bridge's injury. Highland's injury was real, but it was not personal or particularized; rather, Highland was injured, like the other creditors of Bridge, because Bridge was $18 million poorer. All the creditors, not only Highland, would benefit if the transfers were found to be improper. Highland thus has an interest in Bridge's claims against Welsh Carson, but those claims are property of Bridge, not Highland personally, to be enforced by the plan

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

administrator.

The Caplin case supports this characterization of the injury. In that case the reorganization trustee asserted claims on behalf of the bankrupt corporation's creditors (debenture holders) against the indenture trustee for failure to maintain certain financial requirements under the debenture. The Court held that the reorganization trustee could not assert the claim because the parties "truly affected" by the indenture trustee's breach of duty were the debenture holders, not the estate. 406 U.S. at 430-31.

Shearson Lehman Hutton, Inc. v. Wagoner also supports the plan administrator. In that case the trustee had standing to bring a churning claim against the debtor's broker but lacked standing to bring a claim against the broker for defrauding the debtor with the cooperation of the debtor's management (its sole stockholder and decision maker). The court held that the trustee lacked standing to bring the second type of claim because "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." 944 F.2d at 120. In the present case, Highland did not allege that Welsh Carson and Bridge management looted Bridge; rather, Highland alleged that Welsh Carson caused Bridge to injure itself (and its creditors) by improperly transferring its assets to SAVVIS.

This Court agrees with the bankruptcy court that under Missouri law the tort claims belonged to the corporation (Bridge), not the creditor (Highland). The claims are essentially ones to recover assets improperly diverted from the corporation and belong to the corporation under Missouri law. E.g., Centerre Bank of Kansas City N.A. v. Angle, 976 S.W.2d 608, 624 (Mo. Ct. App. 1998) (two shareholders sought to recover assets of corporation allegedly diverted and misappropriated by third shareholder; diversion of assets necessarily directly harmed corporation

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and only indirectly harmed them in their capacities as shareholders; any recovery of corporate assets would belong to corporation, not individual shareholders); Peterson v. Kennedy, 791 S.W.2d 459, 464 (Mo. Ct. App. 1990) (minority shareholders brought breach of fiduciary duty claim against controlling shareholder of corporation for transfer which diminished value of corporation; corporation was directly injured by controlling shareholder's misconduct, even though controlling shareholder may also have breached duty to minority shareholders).

Educators Group Health Trust also supports this analysis. In that case the trust was established to provide health benefits to teachers in small school districts. The trust filed for bankruptcy. The participating school districts became creditors. The school districts sued the third-party administrators of the trust, alleging mismanagement and fraud. The court held that the claims that alleged "a direct injury to the trust, from which an injury to the individual school districts is derived," belonged exclusively to the estate. 25 F.3d at 1284-85 (Texas law) (plaintiffs alleged that defendants negligently managed the trust, causing the trust to become insolvent, and thus unable to pay health claims of employees of school districts). However, other claims alleged a direct injury to the school districts themselves which was not derivative of any harm to the trust. The court held that those claims belonged to the school districts. Id. at 1285 (plaintiffs alleged that defendants intentionally misrepresented to them the financial situation of the trust and that they materially relied to their detriment on such misrepresentations). We note that in the present case Highland did not restructure its debt in reliance on Welsh Carson's misrepresentations. To the extent that Bridge may have acted in reliance on Welsh Carson's misrepresentations, Bridge was directly injured. Highland's injury was only derivative of that of Bridge.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Mixon v. Anderson does not hold that a trustee lacks standing to assert veil-piercing claims that belong to the bankruptcy estate. In that case the court correctly looked to state law to determine whether the claim belonged to the debtor. The court held that the trustee lacked standing because in Arkansas veil-piercing claims could not be brought by the corporation and thus were not property of the estate. 816 F.2d at 1225. The court carefully noted that "[i]t is possible that some states permit the corporation or its stockholders to assert an alter ego cause of action to pierce the corporate veil, and thus, that a bankruptcy trustee would be able to enforce the claim on behalf of the debtor corporation." Id. at 1226 n.7. Thus, Mixon v. Anderson supports holding the plan administrator has standing to assert a veil-piercing claim where such a claim belongs to the corporation under state law. See Kalb, Voorhis & Co. v. American Financial Corp., 8 F.3d at 134 (noting that *Mixon v. Anderson* should not be read too broadly).

The bankruptcy court properly concluded that under Missouri law the veil-piercing claim belonged to the corporation (Bridge), not the creditor (Highland). Missouri law would permit a trustee to maintain an alter ego action when that action is tied to specific assets or transactions. See, e.g., In re Americana Services, Inc., 173 B.R. 650, 654 (Bankr. W.D. Mo. 1994), citing In re Kroh Bros. Development Co., 117 B.R. 499, 501 (W.D. Mo. 1991). In the present case, Highland sought to challenge specific transactions (the pre-petition transfers of $18 million). Highland did not seek to hold Welsh Carson liable for all Bridge's debts in general.

Finally, this Court agrees with the bankruptcy court that, to the extent that the tort and veil-piercing claims are similar to a fraudulent conveyance claim, 11 U.S.C. § 548(b), the claims belong exclusively to the plan administrator. Highland alleged that Welsh Carson made false representations to Highland so Highland would not file an involuntary petition and thus stop

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Bridge from making pre-petition transfers to SAVVIS without adequate consideration. The underlying focus of Highland's claim and a fraudulent conveyance claim is the same—a pre-petition transfer without adequate consideration. "To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." National American Insurance Co. v. Ruppert Landscaping Co., 187 F.3d at 442. In that case a secured creditor had obtained a lifting of the automatic stay with respect to its claims. Sureties of the debtor, on whose bonds the debtor had defaulted, sued the secured creditor challenging the creditor's purchase of some of the debtor's assets. The court held that the sureties lacked standing to pursue claims that were similar in nature and purpose to fraudulent conveyance claims that could only be brought by the trustee. Id. at 441. "Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process." Id.

Accordingly, the order of the bankruptcy court approving the proposed settlement and dismissing with prejudice the claims against Welsh Carson, including the claims asserted by Highland is affirmed.

Dated this 6th day of June, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com